[866 NE2d 1004, 834 NYS2d 676]

In the Matter of MARIE LACROIX, Respondent, v SYRACUSE EXEC-
UTIVE AIR SERVICE, INC., et al., Appellants. WORKERS' COM-
PENSATION BOARD, Respondent.

Argued February 14, 2007; decided March 29, 2007

**POINTS OF COUNSEL**

*Susan B. Marris,* Liverpool, *James S. Fiedler* and *Gregory J. Allen* for appellants. I. Workers' Compensation Law § 25 (1) (a), (b) mandate periodic payments of compensation. (*Matter of Lynch v Board of Educ. of City of N. Y.,* 1 AD2d 362, 3 NY2d 871; *Lauritzen v Terry & Tench Co.,* 193 App Div 809; *Matter of Linger v Anchor Motor Frgt.,* 124 AD2d 350; *Matter of Landgrebe v County of Westchester,* 57 NY2d 1; *Matter of Marhoffer v Marhoffer,* 220 NY 543; *Matter of Wilkosz v Symington Gould Corp.,* 14 AD2d 408, 14 NY2d 739; *Wozneak v Buffalo Gas Co.,* 175 App Div 268; *Matter of Jensen v Southern Pac. Co.,* 215 NY 514, 244 US 205; *Iacone v Cardillo,* 208 F2d 696; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.],* 76 NY2d 248.) II. Workers' Compensation Law § 25 (5) (b) provides that compensation is to be paid in a lump sum only when justice so requires; and only when the award is first commuted to its present value. (*Bell v Fraser,* 210 App Div 560; *Matter of Sayres v August Feine & Sons Co.,* 283 App Div 547; *Matter of Rolle v General Foods Corp., Birds Eye Div.,* 19 AD2d 188; *Matter of Reid v Arkansas Co., Inc.,* 233 App Div 451; *Matter of Snyder v Union Mills, Inc.,* 220 App Div 786; *Mandelblatt v Auswaks,* 207 App Div 73; *Wozneak v Buffalo Gas Co.,* 175 App Div 268.) III. In affirming a lump-sum payment of a schedule loss of use award, the Third Department violated canons of statutory construction. (*Matter of Smith v Certain Teed Prods. Corp.,* 85 AD2d 820; *Matter of M.B.,* 6 NY3d 437; *Matter of OnBank & Trust Co. [Hartnett],* 90 NY2d 725; *Matter of Estate of Allen v Colgan,* 190 AD2d 939; *Matter of Albano v Kirby,* 36 NY2d 526; *Matter of Dinelle v Workshop, Inc.,* 181 AD2d 969; *Matter of Freeland v Endicott Forging & Mfg. Co.,* 233 App Div 440; *Matter of Miller v North Syracuse Cent. School Dist.,* 1 AD3d 691; *Matter of Porter v D.A. Collins Constr.,* 28 AD3d 951; *Matter of Salvet v Union Carbide Linde Div.,* 135 AD2d 965.) IV. *Matter of Miller v North Syracuse Cent. School Dist.* (1 AD3d 691 [2003]) does not support payment of a schedule loss of use award in a lump sum. V. Public policy militates against paying a schedule loss of use award in a lump sum. (*Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516; *Matter of Medress v Bond Clothes Co.,* 107 AD2d 71; *Matter of Riley v Syracuse Univ.,* 56 AD2d 163; *Matter of Healey v Carroll,* 282 App Div 969, 283 App Div 676; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.],* 76 NY2d 248; *Matter of Lansberry v Carbide/Graphite Group, Inc.,* 28 AD3d 1031.)

*Oot & Stratton,* East Syracuse (*Michael P. Oot* of counsel), for

Marie LaCroix, respondent. I. Schedule awards under the Workers' Compensation Law are merely a method of calculating the benefits due to a claimant and are unrelated to and not allocable to any particular period of disability and lacking such allocation are logically and legally payable in full and at once. (*Matter of Lynch v Board of Educ. of City of N. Y.,* 1 AD2d 362, 3 NY2d 871; *Matter of Landgrebe v County of Westchester,* 57 NY2d 1; *Matter of Miller v North Syracuse Cent. School Dist.,* 1 AD3d 691; *Matter of Fox v Crosbie-Brownlie, Inc.,* 284 AD2d 42.) II. The citations to the statute by the State Insurance Fund, contending that Workers' Compensation Law § 25 would bar the payments ordered to claimant by the Workers' Compensation Board, are inapposite. III. The decisions of the Workers' Compensation Board and the Appellate Division in this matter are entirely consistent with other sections of the Workers' Compensation Law. (*Matter of Soper v Gouverneur Talc Co.,* 243 AD2d 1001; *Matter of Freeland v Endicott Forging & Mfg. Co.,* 233 App Div 440; *Tolloid v Hopeman & Sons Co.,* 209 App Div 719, 240 NY 550; *Matter of Alber v Tobin,* 33 AD2d 607.)

*Andrew Cuomo, Attorney General,* Albany (*Patrick Barnett-Mulligan, Caitlin J. Halligan* and *Daniel Smirlock* of counsel), for Workers' Compensation Board, respondent. I. Because a schedule award is payment for a permanent partial disability, and does not reflect compensation for a particular period of lost wages, the Workers' Compensation Board may direct that the award be made in a single payment. (*Matter of Lynch v Board of Educ. of City of N. Y.,* 1 AD2d 362, 3 NY2d 871; *Matter of Ott v Green-Wood Cemetery,* 262 NY 532; *Matter of Landgrebe v County of Westchester,* 57 NY2d 1; *Matter of Miller v North Syracuse Cent. School Dist.,* 1 AD3d 691; *Matter of Fox v Crosbie-Brownlie, Inc.,* 284 AD2d 42; *Matter of Briggs v Village of Hamilton,* 136 AD2d 442; *Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516; *Matter of Wilkosz v Symington Gould Corp.,* 14 NY2d 739; *Matter of Salvet v Union Carbide Linde Div.,* 135 AD2d 965.) II. Payment of a Workers' Compensation Law § 15 schedule award in a single payment is consistent with the other provisions of the Workers' Compensation Law and with public policy. (*Matter of Hoffman v Chatham Elec. Light, Heat & Power Co.,* 249 NY 433; *Matter of Marhoffer v Marhoffer,* 220 NY 543; *Matter of Sokolowski v Bank of Am.,* 261 NY 57; *Matter of Gefers v New York Window Cleaning Co.,* 224 App Div 792; *Matter of Sienko v Bopp & Morgenstern,* 248 NY 40; *Matter of Ehrhardt v Eloge, Inc.,* 247 App Div 919; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.],* 76 NY2d 248.)

**OPINION OF THE COURT**

Chief Judge KAYE.

The question before us is whether, as a matter of policy under the Workers' Compensation Law, compensation for loss of use of a body part due to permanent partial disability—known as a "schedule loss of use" award—is payable as a lump sum, or must be made over time. We conclude that the statute's directive that payments be made "periodically" precludes a policy of lump-sum payment of schedule loss of use awards.

In November 2002, claimant Marie LaCroix, a Delta baggage handler employed by Syracuse Executive Air Service, slipped and fell on an iced-over ramp while attempting to load a last-minute bag. As a result, she fractured her left wrist and tore her left rotator cuff, and later filed a claim for compensation with the Workers' Compensation Board. In a February 2003 determination, the Board found the injury to be work related, and claimant's average weekly wage to be $415.83. While her claim was pending, she was awarded permanent partial disability payments for 72 weeks and three days, and temporary total disability payments for 24 weeks at $277.22 per week, amounting to $26,724.01.

On October 1, 2004, the Workers' Compensation Board held a hearing on Ms. LaCroix's claim for a schedule award for permanent partial disability. The parties stipulated to a 75% loss of use of claimant's left arm. Claimant's lawyer requested that "the entire schedule be paid, less, of course, prior payments, all at once rather than spreading it all out in the future as the old decisions used to do." In an October 8, 2004 decision, the Board determined that Ms. LaCroix's 75% schedule loss of use entitled her to 234 weeks of benefits at $277.22, or $64,869.48, less payments already made, and directed the employer's insurance carrier "to pay schedule loss of use award in a lump sum."

Upon review, a panel of the Board affirmed the lump-sum payment. It found that, although Workers' Compensation Law § 25 (1) (b) specified biweekly payments, it also provided that "the board may determine that any payments may be made monthly or at any other period, as it may deem advisable." Quoting *Matter of Miller v North Syracuse Cent. School Dist.* (1 AD3d 691, 692 [3d Dept 2003]), the panel explained that "[w]hen an award is based on a finding of permanent disability, the benefit is intended to recompense a claimant for the loss of all of his or her earning capacity on a permanent basis—i.e.,

without respect to any particular time frame" (Mem of Board Panel Decision of Dec. 28, 2004 [citation omitted]). The panel acknowledged that the assignment of a number of weeks to a specific injury was used to calculate the amount of the compensation award, but pointed out that this number did not otherwise correspond to payment for loss of use, as "even if no time is lost, [the schedule loss of use] is payable in full." Thus, it held that "the Board may direct payments of a schedule loss of use presently, in full, without regard to a set period of calendar weeks," and that a lump-sum award did not require compliance with the commutation procedures of Workers' Compensation Law § 25 (5) (b) as "there are no allocated future payments that could be subject to a commutation."

The Appellate Division unanimously affirmed. It determined that the contentions of claimant's employer were

> "based upon two erroneous assumptions—namely, that a schedule award is allocable to a particular period of disability and, hence, constitutes compensation in lieu of wages, which must, in turn, be paid periodically, and, further, that the foregoing statutory provisions expressly require a schedule award to be paid out over a particular period of time" (25 AD3d 967, 968 [2006]).

Dismissing the employer's arguments as to the Board's past practice, the Appellate Division concluded that "regardless of whether the Board previously may have treated a schedule award as one to be paid out over time, we are satisfied that the case law, as it subsequently has evolved, coupled with the general powers granted to the Board" supported its decision to make such payments payable in one lump sum (*id.* at 969). We now reverse.

## Analysis

Where the interpretation of a statute or its application involves "knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom," we regularly defer to the agency responsible for its administration, unless that determination is irrational or unreasonable (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). The issue before us here, however, is primarily one of statutory interpretation for the courts. Indeed, the Board itself notes that its shift in policy rested on the Third Department's opinion in *Miller*, signaling

"little basis to rely on any special competence or expertise of the administrative agency" (*id.* at 459).

Contrary to the Appellate Division, we conclude that the Board's interpretation contravenes the plain language of Workers' Compensation Law § 25.

Enacted in 1913 as the Workmen's Compensation Law, the statute provides compensation for four different types of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability (Workers' Compensation Law § 15 [1], [2], [3], [5]). In the case of permanent total disability, an employee is awarded payment of a percentage of wages during the continuance of the disability; the same is true for temporary total disability and temporary partial disability (*see* Workers' Compensation Law § 15 [1], [2], [5]). Permanent partial disability, however, is called a schedule loss of use award because the statute assigns—as by a "schedule"—a fixed number of lost weeks' compensation according to the bodily member injured (*see* Workers' Compensation Law § 15 [3]).

While the general purpose of permanent and temporary disability awards pursuant to section 15 (1), (2) and (5) is to "compensat[e] for disability to work made on the basis of average weekly wages," a schedule loss of use award is to "compensate for loss of earning power" (*Matter of Marhoffer v Marhoffer*, 220 NY 543, 546, 547 [1917]). Nevertheless, all compensation awards are intended to provide a "limited and certain, not full but uncertain" remedy regardless of the fault of the employer (*see id.* at 547), and to "continue the wage income as nearly uniform as the provisions of the law would permit" after the employee's injury (*Matter of Lauritzen v Terry & Tench Co.*, 193 App Div 809, 810 [3d Dept 1920]).

Section 25 directs the method of payment of such compensation. Prior to 1921, section 25 provided that compensation be paid "periodically, in accordance with the method of payment of the wages of the employee at the time of his injury or death" (*see* L 1913, ch 816). In 1921, the Legislature amended this section to require that it be paid "periodically and *promptly in like manner as wages*" and on accrual that it be paid "directly to the person entitled thereto without waiting for an award" (*see* L 1921, ch 540, § 1 [emphasis added]). The additional language was intended to expedite the award process. Whereas injured workers previously were not entitled to *any* payment of an

award prior to a hearing, regardless of the employee's undisputed right to compensation, following the amendment most injured workers were receiving compensation within three weeks of injury (*see* Rep to Legislature of Joint Comm on Labor and Indus, Bill Jacket, L 1922, ch 615, at 5).

Section 25 (1) (b) provides that

> "[t]he first payment of compensation shall become due on the fourteenth day of disability on which date or within four days thereafter all compensation then due shall be paid, and the compensation payable bi-weekly thereafter; but the board may determine that any payments may be made monthly or at *any other period*, as it may deem advisable" (emphasis added).

Section 25 (5) (b) further permits the Board, "whenever it shall so deem advisable," to "commute such periodical payments to one or more lump sum payments to the injured employee . . . provided the same shall be in the interests of justice" (Workers' Compensation Law § 25 [5] [b]). The purpose of this section was not to "destroy the general scheme of the statute establishing periodical payments . . . , [r]ather it was . . . to provide for particular and exceptional instances" where such a deviation would be desirable (annotation to Workmen's Compensation Law § 25, Cons Laws of NY Ann of 1918). Periodic payments commuted pursuant to this section must, however, be reduced to present value (*see* Workers' Compensation Law § 25 [5] [b]; § 27 [2]).

Reading these provisions harmoniously, we conclude that section 25 provides for payment of compensation at the time the injured worker would normally receive his or her wages and continued biweekly payments, unless the Board determines that payments should be made at different intervals, but it does not contemplate a policy of payment as one lump sum. "Period" plainly means a *division* or *portion* of time. "Periodic payment" means "[o]ne of a series of payments made over time instead of a one-time payment for the full amount" (Black's Law Dictionary 1165 [8th ed 2004]). Section 25 explicitly requires periodic payment of compensation, even if such compensation is payable at a period other than biweekly or as wages customarily accrue (*see* Workers' Compensation Law § 25 [1] [a], [b]), and we cannot read "at any other period" in Workers' Compensation Law § 25 (1) (b) to include a one-time payment. Although other provisions of the Workers' Compensation Law grant the Board

considerable discretion in determining "the time for the payment of compensation" (see Workers' Compensation Law § 142 [1]), section 142 is limited by section 25 (1), which explicitly requires periodic payment.

As the statute limits commutation of such periodic payments to individual situations in which the Board determines that the interests of justice so require—and then only upon an actuarial reduction—the Board was without authority to direct the full-value lump-sum payment ordered here. Neither the general purpose of the Workers' Compensation Law in ensuring uniform continuation of an injured worker's income flow, nor the specific purpose of the Legislature in amending section 25 to prevent delay in commencement of payments, establishes an intent to permit payment of schedule loss of use awards to fall outside of the statute's direct prescription.

Other provisions of the Workers' Compensation Law, while ancillary to the issue presented here, support our reading of the statute. Section 15 (3) (u), for example, provides that two or more schedule loss of use awards for permanent partial disabilities "shall run consecutively"; section 15 (3) (v) states that an employee may be eligible for additional compensation for impairment of wage earning capacity "after the termination" of a permanent partial disability schedule award for a 50% or more loss of an arm, leg, hand or foot. Subdivision (4) provides for discontinuation of a schedule loss of use award upon the death of a claimant with no heirs (with the exception of reasonable funeral expenses) if claimant dies from causes unrelated to the compensable injury (Workers' Compensation Law § 15 [4] [d]). The plain language of these provisions contemplates payment of an award over a period of time. Although literal application is possible, these provisions would be substantially compromised in meaning and effect—payments to run consecutively would simply be made back to back, options available after termination of an award would immediately accrue, and cancellation of benefits upon death would have even more limited application—were we to read section 25 as the Board did.[1]

Nor are we compelled to interpret section 25 differently based on a sequence of cases that delineate the conceptual

1. These provisions apply equally to commutation of a periodic payment to a lump sum pursuant to section 25 (5). Lump-sum payments, however, would be the exception rather than the rule, and such considerations would presumably factor into an interests of justice analysis.

distinction between schedule loss of use and other compensation awards. In fact, we do not agree with claimant that the case law is at odds with our statutory analysis. In *Matter of Lynch v Board of Educ. of City of N. Y.* (1 AD2d 362 [1956], *affd* 3 NY2d 871 [1957]), the court considered whether section 25 permitted an employer to be reimbursed by its carrier for the full amount of weekly wages paid following injuries that caused claimant's total disability. It found that the statute permitted reimbursement from the nonschedule award for up to the statutorily prescribed weekly compensation rate, but no more. In distinguishing *Matter of Ott v Green-Wood Cemetery* (262 NY 532 [1933]), in which we held that a schedule loss of use award would permit such full reimbursement, the *Lynch* court noted that

> "[i]n the case of a schedule award, the weekly rate and the number of weeks specified in the schedule are simply the measure by which the total amount of the award is to be determined. The payment is not analogous to the payment of weekly compensation for temporary disability. Liability for the schedule award comes into existence on the date of the accident. The payment of the schedule award is not allocable to any particular period of disability" (*Matter of Lynch*, 1 AD2d at 365).

Whereas the nonschedule award was limited to the specified weekly rate, the schedule award, untethered to a period of weekly compensation, was not so limited.

We considered a similar question in *Matter of Landgrebe v County of Westchester* (57 NY2d 1 [1982]). Asked to determine whether an employer who had paid full wages to an employee during a period of temporary disability was entitled to full reimbursement out of a later schedule award for a different (though consequential) injury, we held that the employer was entitled only to the amount of the maximum weekly total disability rate. As the award of weekly compensation for the previous nonschedule injury was not comparable to the schedule loss of use award for the subsequent injury, and each injury constituted a "distinct physical occurrence and impairment" (*id.* at 11), reimbursement for the former could not be made from the latter. We explained that—as opposed to a section 15 award for any other type of disability—a schedule award was "independent of the time an employee actually loses from work" even though computation of such award required multiplication of

the applicable weekly rate by "a statutorily prescribed number of weeks" (*id.* at 6).

More recently, in *Miller*, the court considered whether a schedule loss of use award overlapped with a temporary total disability award to violate the statutory maximum. Relying in part on *Lynch* and *Landgrebe*, the Appellate Division determined that no violation had occurred, as the losses each award was intended to reimburse were distinct—one to compensate for earning capacity, the other for temporary loss of wages during a specific period of time—and the schedule loss of use was not allocable to any particular time frame (*Miller*, 1 AD3d at 693).

The Board bases its decision on *Miller*. Assuming that *Miller* is correct, we do not agree that *Miller* or its predecessors dictate that result.[2] The conceptual framework for a schedule award as unallocable to a particular period of lost wages is separate and distinct from the award's method of payment. Neither *Lynch*, nor *Landgrebe*, nor *Miller* addresses the method of payment of a schedule loss of use award, much less overrides a statutory payment mechanism that has been in place for close to a century.

We recognize that arguments have long been made on both sides of the issue. Some have said that lump-sum payments fail to account for recipients who spend their awards up front and then turn to state resources for support, putting the community "right back where it would have been if there had been no compensation system at all" (*see* 4 Larson's Workers' Compensation Law § 80.05 [5], at 80-28 [2006]). Others have reasoned that, as a schedule loss equates to a fixed award calculable upon injury, the state should not delay full payment over a period of years, effectively preventing a claimant from choosing how to invest these funds (*see* Gellhorn and Lauer, *Administration of the New York Workmen's Compensation Law [Part II]*, 37 NYU L Rev 204, 229 [1962]). One thing is clear: any departure from the method of periodic payment of schedule loss of use awards specified in the Workers' Compensation Law must come from the Legislature.

---

2. We distinguish *Matter of Charles A. Field Delivery Serv. (Roberts)* (66 NY2d 516 [1985]), in which we noted that an agency must provide an explanation for its departure from agency precedent adequate for a reviewing court to ascertain whether it has done so for valid reasons. Here, the Board provided no reasons of its own for its change in policy. *Field*, in any event, is inapposite, as this case concerns not a policy or precedent within the agency's purview but the interpretation of a statute.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division, with directions to remand to the Workers' Compensation Board for further proceedings in accordance with this opinion.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.