[970 NE2d 399, 947 NYS2d 376]

In the Matter of the Claim of WAYNE SCHMIDT, Respondent, v FALLS DODGE, INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Argued March 21, 2012; decided May 1, 2012

**POINTS OF COUNSEL**

*Gregory J. Allen, General Attorney, State Insurance Fund*, Buffalo (*John R. Gibbon* and *Thomas P. Etzel* of counsel), for appellants. Concurrent schedule and nonschedule awards, each made at the maximum statutory award rate and covering the same period, violate Workers' Compensation Law § 15 (6). (*Matter of LaCroix v Syracuse Exec. Air Serv., Inc.*, 8 NY3d 348; *Matter of Linger v Anchor Motor Frgt.*, 124 AD2d 350; *Matter of Salvet v Union Carbide Linde Div.*, 135 AD2d 965; *Matter of Soper v Gouverneur Talc Co.*, 243 AD2d 1001; *Matter of Miller v North Syracuse Cent. School Dist.*, 1 AD3d 691; *Matter of Lansberry v Carbide/Graphite Group, Inc.*, 28 AD3d 1031; *Matter of Gallman v Walt's Tree Serv.*, 43 AD2d 419; *Matter of Wilkosz v Symington Gould Corp.*, 14 AD2d 408, 14 NY2d 739; *Matter of Kaminski v Mohawk Carpet Mills*, 11 AD2d 827.)

*Eric T. Schneiderman, Attorney General*, Albany (*William E. Storrs, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondent. Claimant's schedule award for presumed future lost earnings is independent of, and thus not offset by, his temporary disability awards for present lost earnings. (*Matter of Landgrebe v County of Westchester*, 57 NY2d 1; *Matter of Lynch v Board of*

*Educ. of City of N. Y.*, 1 AD2d 362, 3 NY2d 871; *Matter of Wil-kosz v Symington Gould Corp.*, 14 AD2d 408, 14 NY2d 739; *Matter of Lamantia v Midland El. Co., Inc.*, 59 AD3d 892; *Braschi v Stahl Assoc. Co.*, 74 NY2d 201; *Matter of Mlodozeniec v Worthington Corp.*, 9 AD2d 21; *Uniformed Firefighters Assn., Local 94, IAFF, AFL-CIO v Beekman*, 52 NY2d 463; *Matter of Warshawsky v DiNapoli*, 73 AD3d 1357; *Matter of LaCroix v Syracuse Exec. Air Serv., Inc.*, 8 NY3d 348.)

### OPINION OF THE COURT

SMITH, J.

Workers' Compensation Law § 15 (6) provides that compensation for any disability, partial or total, shall not exceed a fixed maximum per week. At issue in this case is the application of the cap when an employee has received several awards for different injuries, at least one of which is a so-called "schedule loss of use" award being paid periodically pursuant to the pre-2009 version of Workers' Compensation Law § 25. We hold that in such cases an employee's total weekly payment may not exceed the cap. The schedule award is not nullified by the other awards, but must be deferred until the time comes when the cap will not be exceeded.

### I

Plaintiff worked as a collision shop technician, repairing automobiles. He suffered several injuries on the job, of which three, all occurring in 2005, are relevant to this appeal. On February 21, he slipped on ice, injuring his hip and back. On March 18, he suffered a lower back sprain. He left his job on June 27, and later reported hearing loss beginning on that date, attributable to loud noise at his place of work. He applied for and received workers' compensation benefits for all three injuries.

For the hip and back injuries, the workers' compensation carrier for claimant's employer was directed, in separate awards, to pay claimant a total of $400 per week—the maximum allowed, at the relevant time, under Workers' Compensation Law § 15 (6). Though the disabilities caused by the hip and back injuries were designated as "temporary," nothing in the record indicates that these $400 weekly payments have ever been discontinued.

On September 21, 2007, a Workers' Compensation Law Judge made an award for the hearing loss claim. Claimant was found to have a permanent partial disability, entitling him to a schedule loss of use award under Workers' Compensation Law

§ 15 (3). As we explained in *Matter of LaCroix v Syracuse Exec. Air Serv., Inc.* (8 NY3d 348, 353 [2007]):

> "[T]he [Workers' Compensation Law] provides compensation for four different types of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability (Workers' Compensation Law § 15 [1], [2], [3], [5]). In the case of permanent total disability, an employee is awarded payment of a percentage of wages during the continuance of the disability; the same is true for temporary total disability and temporary partial disability (*see* Workers' Compensation Law § 15 [1], [2], [5]). Permanent partial disability, however, is called a schedule loss of use award because the statute assigns—as by a 'schedule'—a fixed number of lost weeks' compensation according to the bodily member injured (*see* Workers' Compensation Law § 15 [3])."

The Judge in this case found that claimant's hearing loss entitled him to 32.145 weeks of benefits at the rate of $400 per week; the award specified a period from September 27, 2005 (the "date of disablement" found by the Judge) to May 10, 2006. After considering the carrier's objections, the Judge concluded on November 23, 2007 that the schedule award was "currently payable in full," notwithstanding the fact that claimant had received during the period in question, and was still receiving, $400 per week for his other claims. The Judge found the issue to be controlled by *Matter of Miller v North Syracuse Cent. School Dist.* (1 AD3d 691, 692 [3d Dept 2003]), in which the Appellate Division held that because a schedule award "is not allocable to any particular period," it "cannot be deemed to overlap with" a temporary total disability award.

Also relying on *Miller*, a panel of the Workers' Compensation Board affirmed the Judge's order and the Appellate Division affirmed the Board's decision (*see Matter of Schmidt v Falls Dodge, Inc.*, 67 AD3d 1303 [3d Dept 2009]). We granted leave to appeal (16 NY3d 714 [2011]), and now reverse.

## II

Workers' Compensation Law § 15 (6) (a) says, in relevant part:

> "Compensation for permanent or temporary partial disability, or for permanent or temporary total disability

due to an accident or disablement resulting from an occupational disease that occurs . . . on or after July first, nineteen hundred ninety-two [and before July one, two thousand seven], shall not exceed four hundred dollars per week."

■ The Board and the Appellate Division have held in this case that claimant was entitled to receive $800 per week for a period of roughly 32 weeks. That result cannot be squared with the cap imposed by section 15 (6). The Appellate Division's decision in *Miller*, which upheld a similar award, is incorrect and should not be followed.

The basis for the *Miller* court's conclusion was that although Workers' Compensation Law § 25 (1) (b) (until its amendment by L 2009, ch 351, § 1) required "periodic payment" of schedule awards (*LaCroix*, 8 NY3d at 355), the allocation of such awards to any particular period of time is arbitrary. A schedule award is compensation for a partial *permanent* disability, not a disability existing only during the weeks when the award is paid. Therefore, under the reasoning of *Miller*, there is no reason why an employee who suffers a temporary disability from one injury, and a permanent partial disability from another, cannot receive both awards—periodic payments for the temporary disability, and a schedule award for the permanent one.

■ This reasoning is sound as far as it goes. There is no reason why a claimant may not recover a schedule loss of use award in addition to a temporary disability award. The *Miller* court erred, however, in allowing a claimant to recover both at the same time, with the result that weekly payments exceeded the statutory cap. A claimant entitled to a schedule award that is to be paid periodically must wait until his other disability payments have ceased, or have dipped below the cap, to be paid his schedule award.

A contrary holding would not only contradict the plain language of section 15 (6), but would produce anomalous results. A worker who was permanently totally disabled in 2005—a quadriplegic, for example—can receive no more than $400 per week for his or her disability. It makes no sense for a worker who suffered a hip injury, lower back pain and hearing loss in that year to receive $800 per week. Nor can it be said that time will eliminate the anomaly—i.e., that in the long run no claimant will recover an average of more than $400 per week—because no one can say when, if ever, a "temporary" disability

will end. Disabilities initially labeled "temporary" may be reclassified as permanent (indeed, the carrier in this case has annexed to its brief documents showing that claimant's back sprain has now been so reclassified); or they may turn out to be permanent in fact. In such a case, the rule of *Miller* would permit a partially disabled claimant to recover, over his or her working life, more than a totally disabled one.

We therefore hold that periodic payments of a schedule loss of use award must be deferred to the extent that those payments, when combined with payments of another disability award, would exceed the cap imposed by Workers' Compensation Law § 15 (6). We hold no more than this, and do not decide what implications, if any, our holding may or may not have for cases governed by the 2009 amendment to section 25 (1) (b): that section, as amended, now says that schedule loss of use awards "shall be payable in one lump sum, without commutation to present value upon the request of the injured employee."

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division with directions to remand it to the Workers' Compensation Board for further proceedings in accordance with this opinion.

CIPARICK, J. (dissenting). Because I agree with the Workers' Compensation Board (the Board) and the Appellate Division that a "schedule loss of use award" for a permanent partial disability is not linked to a particular time period, but rather is compensation for future loss of earnings without regard to present ability to work, and because I further believe that a schedule award should not be offset by a temporary disability award for present lost earnings, I respectfully dissent.

In *Matter of Miller v North Syracuse Cent. School Dist.* (1 AD3d 691 [3d Dept 2003]) the Appellate Division held that a scheduled award was not allocable to any particular period of disability and therefore "[a] schedule award cannot be deemed to overlap with [a] claimant's temporary total disability award covering that period" (*id.* at 692). The Appellate Division subsequently reenforced this holding in *Matter of Lansberry v Carbide/Graphite Group, Inc.* (28 AD3d 1031, 1032 [3d Dept 2006] ["The schedule award is intended to compensate (claimant) for future loss of earnings due to his hearing loss, and thus, the two awards do not overlap"]).

Since the decisions in *Matter of Miller* and *Matter of Lansberry*, the Legislature has extensively restructured the Workers'

Compensation Law. Notably in 2007, "a comprehensive reform of the Workers' Compensation Law was enacted as a result of years of negotiations by the Governor's Office, the Legislature, the Board and representatives of business and labor" (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 53 [2011]). The legislative history of this comprehensive overhaul of the Workers' Compensation Law neither cites to *Matter of Miller* or *Matter of Lansberry*, nor does the language of the legislation make any effort to affect the impact of these decisions. "It is well settled that the legislative history of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted" (*Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 157 [1987]). Furthermore, "[w]here the interpretation of a statute is well settled and accepted across the State, it is as much a part of the enactment as if incorporated into the language of the act itself" (*id.*). Because the Legislature is presumed to be aware of the decisions in *Matter of Miller* and *Matter of Lansberry*, and as it did not comment on or make any change to blunt the effects of these decisions, it must be assumed that it intended to incorporate the holdings—that schedule awards do not overlap with temporary total disability awards—into the existing law.

That the Legislature did not intend to overturn the holdings in *Matter of Miller* and *Matter of Lansberry* is even more evident when considering the 2009 revision to the Workers' Compensation Law. That revision was made in direct response to our holding in *Matter of LaCroix v Syracuse Exec. Air Serv., Inc.* (8 NY3d 348 [2007]). In *Matter of LaCroix* we held that a schedule award could not be paid in a lump sum because former Workers' Compensation Law § 25 (1) "explicitly require[d] periodic payment" and section 25 (1) (b) could not be read "to include a one-time payment" (*id.* at 354-355). The Legislature, in 2009, amended Workers' Compensation Law § 25 (1) (b) and § 15 (3) (u) in order to allow for a worker to receive a schedule award in a lump sum (*see* L 2009, ch 351, §§ 1, 2, 2009 McKinney's Session Laws of NY, at 1063). That the Legislature amended the law to overturn the holding in *Matter of LaCroix*, while leaving the holdings of *Matter of Miller* and *Matter of Lansberry* intact clearly indicates that the Legislature intended for the monies received by an injured worker for a schedule award for a permanent partial disability—in this case, partial loss of hearing—to be temporally independent of any other monies received as a

result of other workers' compensation awards. Moreover, the Legislature now allows for a schedule award to be received in a lump sum, further indicating that such an award is independent of the maximum weekly compensation as provided for by Workers' Compensation Law § 15 (6).

The majority seeks to interpret the statute in such a way as to avoid "anomalous results" (majority op at 182-183), since a contemporaneous payment of both a schedule and non-schedule award could result in a weekly payment in excess of the statutory maximum. However, the Legislature has made it clear that it agrees with or at the very least acquiesces in the holding of *Matter of Miller* and it is not the purpose of this Court to substitute its judgment for that of the Legislature (*see Montgomery v Daniels*, 38 NY2d 41, 56 [1975]).

Finally, we have long held that the Workers' Compensation Law is remedial in nature and "that compensation should be given . . . to the employee . . . for earning capacity destroyed by an accident in the course of or connected with his work" (*Matter of Waters v Taylor Co.*, 218 NY 248, 251-252 [1916]). As stated earlier, the purpose of a "schedule loss of use" award is to compensate for future loss of earning capacity (*see Matter of Miller*, 1 AD3d at 693). It is clear that the Legislature, through its recent amendments, has expressed a desire to expedite the payment of such schedule awards where possible, and not hold them in abeyance for a period while a claimant may continue to receive other disability awards that together would exceed the statutory maximum. This indefinite period of time, as adopted by the majority, wherein payment for a schedule award would be deferred, can result in considerable hardship to a claimant and is not in keeping with the remedial and protective scheme of the Workers' Compensation Law (*see Matter of Waters*, 218 NY at 251).

Accordingly, I would permit the overlap of payments, although currently exceeding the statutory maximum, and affirm the order of the Appellate Division. The question of whether such overlap is permissible allowing for the "anomalous" situation identified by the majority is best left to the Legislature to determine.

Judges GRAFFEO, READ, PIGOTT and JONES concur with Judge SMITH; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN concurs.

Order reversed, etc.