Matter of Green v Dutchess County BOCES (2020 NY Slip Op 01546)





Matter of Green v Dutchess County BOCES


2020 NY Slip Op 01546


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

529624

[*1]In the Matter of the Claim of Kanye Khalid Green, Appellant,
v
Dutchess County BOCES et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: February 19, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Ouimette, Goldstein & Andrews, LLP, Poughkeepsie (Louis M. Dauerer of counsel), for appellant.
Cherry, Edson & Kelly, LLP, Tarrytown (Ralph E. Magnetti of counsel), for Dutchess County BOCES and another, respondents.



Colangelo, J.
Appeal from a decision of the Workers' Compensation Board, filed January 4, 2019, which ruled that claimant was not entitled to receive the remaining 38.8 weeks of decedent's permanent partial disability award subsequent to decedent's death.
In November 2007, Eric Watson (hereinafter decedent) was injured in a work-related accident, and his claim for workers' compensation benefits was established for an injury to his right leg. On March 28, 2012, a Workers' Compensation Law Judge (hereinafter WCLJ) classified decedent as having sustained a permanent partial disability with a 51% loss of wage-earning capacity, entitling him to wage-loss benefits not to exceed 350 weeks (see Workers' Compensation Law § 15 [3] [w]). From the time of classification, decedent was working at reduced wages, and reduced earnings payments were made up until March 12, 2018, at which time decedent died for reasons unrelated to his work injury. At a subsequent hearing, counsel for decedent requested that claimant, decedent's surviving child (born in 2004), receive, pursuant to Workers' Compensation Law § 15 (4) (c),[FN1] the balance or remaining weeks of decedent's nonschedule permanent partial disability award. In a June 2018 notice of decision, a WCLJ found that, although claimant was entitled to any unpaid amounts owed for the 311.2 weeks from the time of decedent's classification to his death, claimant was not entitled to a posthumous award for the remaining 38.8 weeks of the nonschedule award because the claim abated upon decedent's death. Upon administrative review, the Workers' Compensation Board affirmed, finding that Workers' Compensation Law § 15 (4) does not apply to a nonschedule permanent partial disability award and that a posthumous award to claimant was therefore not warranted. The Board reasoned that decedent, upon his death, no longer had causally-related lost time or future earnings to lose as a result of his work-related injury. Claimant appeals.
Claimant argues that, contrary to the finding of the Board, he is entitled to the remaining portion or weeks of decedent's nonschedule permanent partial disability award because Workers' Compensation Law § 15 (4) applies to both schedule loss of use (hereinafter SLU) and nonschedule permanent partial disability awards made pursuant to Workers' Compensation Law § 15 (3).[FN2] "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d 521, 525 [2018] [internal quotation marks and citation omitted]; see Matter of Walsh v New York State Comptroller, ___ NY3d ___, ___, 2019 NY Slip Op 08518, *1 [2019]). Given that the issue before this Court is one of statutory interpretation, "deference need not be accorded to the Board's interpretation, and we are free to ascertain the proper interpretation from the statutory language and legislative intent" (Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1870 [2019] [internal quotation marks and citation omitted], lv dismissed 34 NY3d 1011 [2019]). "Further, provisions of an integrated statutory scheme must be considered as a whole, with each component viewed in relation to the others" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 525 [citations omitted]; see Matter of Till v Apex Rehabilitation, 144 AD3d 1231, 1232 [2016], lv denied 29 NY3d 909 [2017]). With this in mind, we must examine the plain language of subdivision (4) of Workers' Compensation Law § 15 in the context of the workers' compensation benefit system for a permanent partial disability.
"Workers' Compensation Law § 15 'provides compensation for four different types of injury: permanent total disability, temporary total disability, permanent partial disability and temporary partial disability'" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 525, quoting Matter of LaCroix v Syracuse Exec. Air Serv., Inc., 8 NY3d 348, 353 [2007]; see Workers' Compensation Law § 15 [1], [2], [3], [5]). As relevant here, "[a] worker who suffers a permanent partial disability typically qualifies for one of two broad categories of primary award under Workers' Compensation Law § 15 (3) — referred to colloquially as a 'schedule loss of use' award or a 'non-schedule' [award] — depending on the nature of the injury" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 525; see Workers' Compensation Law § 15 [3] [a]-[u], [w]; Matter of Raynor v Landmark Chrysler, 18 NY3d 48, 54 n 2 [2011]).
"With respect to schedule injuries, SLU awards are made to compensate for the loss of earning power or capacity that is presumed to result, as a matter of law, from permanent impairments to statutorily-enumerated body members" (Matter Taher v Yiota Taxi, Inc., 162 AD3d 1288, 1289 [2018], lv denied 32 NY3d 1197 [2019]; see Workers' Compensation Law § 15 [3] [a]-[u]; Matter of Walczyk v Lewis Tree Serv., Inc., 134 AD3d 1364, 1365-1366 [2015], lv denied 28 NY3d 902 [2016]). "By contrast, compensation for a permanent partial disability that arises from a nonschedule injury, i.e., an injury to a body member not specifically enumerated in subsections (a)-(u) [of Workers' Compensation Law § 15 (3)], is based on a factual determination of the effect that the disability has on the [worker's] future wage-earning capacity" (Matter Taher v Yiota Taxi, Inc., 162 AD3d at 1289; see Workers' Compensation Law § 15 [3] [w]). In that regard, whereas an SLU award "is not allocable to any particular period of disability and is independent of any time that the [worker] might lose from work" (Matter Taher v Yiota Taxi, Inc., 162 AD3d at 1289; see Matter of Robinson v Workmen's Circle Home, 164 AD3d 1000, 1001 [2018]; Matter of Keselman v New York City Tr. Auth., 18 AD3d 974, 976 [2005], appeal dismissed 5 NY3d 880 [2005], lv denied 6 NY3d 708 [2006]), a nonschedule permanent partial disability award under Workers' Compensation Law § 15 (3) (w) requires a calculation of a worker's weekly rate of compensation using the worker's average weekly wages and wage-earning capacity and "specifies the [duration or maximum] number of weeks the worker will receive that weekly sum[] based upon the [worker's] percentage of lost wage-earning capacity" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 526; see Workers' Compensation Law § 15 [3] [w]; Matter of Till v Apex Rehabilitation, 144 AD3d at 1233).
In cases such as this, where an injured worker dies from causes unrelated to the underlying work injury, Workers' Compensation Law § 15 (4) provides that "[a]n award made to a claimant under subdivision three shall in case of death arising from causes other than the injury be payable to and for the benefit of the persons" enumerated in Workers' Compensation Law § 15 (4) (a)-(d). As relevant here, "[i]f there be a surviving child or children of the deceased under the age of eighteen years, but no surviving spouse[,] then [the award is payable] to such child or children" (Workers' Compensation Law § 15 [4] [c]; see Workers' Compensation Law § 33). Since the enactment of Workers' Compensation Law § 15 (4) (see L 1920, ch 534; see also L 1922, ch 615, as amended; L 1927, ch 556, as amended), subdivision (4) has, for nearly 100 years, been interpreted by this Court and the Court of Appeals as giving "the right to certain named beneficiaries to receive the full amount of a schedule award when the injured employee dies prior to the expiration of the [full payment of] the award and from causes other than the [work-related] injuries" (Matter of Manning v Stroh & Wilson, Inc., 247 App Div 233, 234 [1936]; see Matter of Sienko v Bopp & Morgenstern, 248 NY 40, 43 [1928] ["When the injury, however, has not caused death, the award of weekly payments of this limited class of injury, permanent partial disability, may be continued for the [surviving spouse] and child. In other words, the weekly payments do not end with death."]; Matter of Wakefield v Schlaier's Sons Iron Works, 18 AD2d 1121, 1121 [1963]; Matter of Healey v Carroll, 282 App Div 969, 970 [1953]; Matter of Snyder v Wickwire Spencer Steel Co., 277 App Div 233, 234 [1950]; Matter of McCarty v United States Trucking Corp., 255 App Div 741, 742 [1938], affd 281 NY 704, 705 [1939]; Matter of Tellkamp v Brown Print. Co., 252 App Div 717, 717 [1937]; Matter of Bogold v Bogold Bros., Inc., 218 App Div 676, 678 [1926, Hinman, J., concurring] [explaining that a beneficiary "is entitled to such number of weekly payments as had not been paid, including those which had not yet fallen due at the time of his death"], affd 245 NY 574 [1927]; see also Wozneak v Buffalo Gas Co., 175 App Div 268, 275-276 [1916, Kellogg, P.J., dissenting] [opining — prior to the enactment of Workers' Compensation Law § 15 (4) — that an injured worker has "a vested interest in the [permanent partial disability] award" and that, upon his or her death, "the amount unpaid is payable to his [or her] representatives"]).
Until now, we have not had the occasion to address whether any remaining portion or weeks of a nonschedule permanent partial disability award is payable to the beneficiaries identified in Workers' Compensation Law § 15 (4) upon a claimant's death "arising from causes other than the [established] injury" (Workers' Compensation Law § 15 [4]). Subdivision (3) includes both SLU and nonschedule permanent partial disability awards (Workers' Compensation Law § 15 [3] [a]-[t], [w]), and the unqualified language of subdivision (4) — which pertains to "[a]n award made to a claimant under subdivision three" (Workers' Compensation Law § 15 [4] [emphasis added]) — neither distinguishes SLU awards from nonschedule permanent partial disability awards, nor contains any limiting language excepting nonschedule permanent partial disability awards from its scope. Given the unambiguous and unqualified language of subdivision (4) (see Matter of Walsh v New York State Comptroller, 2019 NY Slip Op 08518 at *1), we see no basis to distinguish SLU and nonschedule awards where the plain language of subdivision (4) applies to any and all awards made under Workers' Compensation Law § 15 (3). Accordingly, the language employed in Workers' Compensation Law § 15 (4) reflects that the Legislature intended this subdivision to apply to all permanent partial disability awards made pursuant to subdivision (3) — that is, both SLU and nonschedule permanent partial disability awards (cf. Matter of Logan v New York City Health & Hosp. Corp., 139 AD3d 1200, 1202-1203 [2016]).
We recognize the Board's position that a worker's right to receive a nonschedule award for his or her nonschedule permanent impairments is calculated upon a future "wage loss caused by the established injuries" (Employer: Matter of Metropolitan Hospital, 2016 WL 4720221, *3, 2016 NY Wrk Comp LEXIS 16360, *7 [WCB No. G076 1641, Sept. 6, 2016]; see Workers' Compensation Law § 15 [3] [w]) and that, upon death, an injured worker can no longer establish a causally-related reduction in wages attributable to his or her nonschedule permanent partial disability (see Workers' Compensation Law § 15 [3] [w]; Employer: Center for Discovery, 2019 WL 1313956, *1-3, 2019 NY Wrk Comp LEXIS 2705, *3-7 [WCB No. 9070 1546, Mar. 13, 2019]).[FN3] However, such a position unfairly deprives an injured worker's surviving spouse and/or children of the remaining cap weeks that were established, set and fixed at the time of classification (see Workers' Compensation Law § 15 [3] [w]; Matter of Till v APEX Rehabilitation, 144 AD3d at 1233). Moreover, if an injured worker dies without any reduced earnings, or while at preinjury wages, his or her surviving spouse and/or children would forever be deprived of any benefits because the deceased worker never sustained, and could no longer establish, a causally-related reduction in wages (see Workers' Compensation Law § 15 [3] [w]; Matter of Arias v City of New York, ___ AD3d ___, ___ n 3, 2020 NY Slip Op 01429, *_ n 3 [2020]; Employer: Center for Discovery, 2019 WL 1313956, *1-3, 2019 NY Wrk Comp LEXIS 2705, *3-7 [WCB No. 9070 1546, Mar. 13, 2019]).
In our view, to limit the scope of Workers' Compensation Law § 15 (4) to only SLU awards and to exclude nonschedule permanent partial disability awards runs counter to the plain language of subdivision (4) and creates "disparity between the treatment of the two classes of beneficiaries receiving permanent partial disability compensation — [SLU] award recipients and non-schedule benefit recipients" — under Workers' Compensation Law § 15 (3) (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 528). As articulated by the Court of Appeals, more recent amendments to the Workers' Compensation Law have sought to eliminate the disparity between the two classes of beneficiaries of permanent partial disability awards (see id. at 528-531). In 2007, when the Legislature amended Workers' Compensation Law § 15 (3) (w) to impose durational restrictions by capping the number of weeks that an injured worker is eligible to receive benefits for a nonschedule permanent partial disability award (see L 2007, ch 6, § 4),[FN4] "the [L]egislature sought to reduce unfairness and create greater parity among different classes of permanent partial disability benefit recipients by reducing disparities between the scope of [permanent partial disability] benefits" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 530-531; see Governor's Program Bill Mem No. 9, Bill Jacket, L 2007, ch 6, at 16-17; Assembly Introducer's Mem in Support, Bill Jacket, L 2007, ch 6 at 30). As a result of the durational cap weeks added by the Legislature, nonschedule permanent partial disability "benefits became comparable to most [SLU] awards, in that both types of primary award are now generally payable at most for a specified number of weeks based on the 'schedule' or durational provisions set forth in the pertinent subsections of the statute" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d at 529-530).[FN5]
If we adopted the Board's limiting interpretation of subdivision (4), we "would effectively perpetuate the very unfairness that the [L]egislature sought to eliminate now by permitting" the eligible beneficiaries so enumerated in Workers' Compensation Law § 15 (4) to receive only SLU awards and not nonschedule permanent partial disability awards (id. at 531). Accordingly, given the plain and unqualified language of Workers' Compensation Law § 15 (4), and in consideration of the recent amendments to the Workers' Compensation Law reflecting the Legislature's intent to eliminate disparity between the two different classes of permanent partial disability awards, we hold that claimant is entitled to an additional posthumous award for the remaining cap weeks owed for decedent's nonschedule permanent partial disability award (see Matter of Sienko v Bopp & Morgenstern, 248 NY at 43).[FN6] To the extent that we have not addressed the employer's remaining contentions, they are, in light of our decision herein, either academic or without merit.
Garry, P.J., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as limited the nonschedule permanent partial disability award payable to claimant to 311.2 weeks; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: Decedent did not have a surviving spouse (see Workers' Compensation Law § 15 [4] [a]-[b]).

Footnote 2: We note that the Attorney General elected not to file a responding brief on behalf of the Board in this appeal.

Footnote 3: We note, however, that the Board has characterized an injured worker's cap weeks as a "real benefit" that "vests with the [worker] upon classification" (Employer: Matter of Metropolitan Hospital, 2016 WL 4720221 at *3; see Employer: Cold Spring Hills Center, 2019 WL 3980991, *3, 2019 NY Wrk Comp LEXIS 9414, *7 [WCB No. G124 3859, Aug. 15, 2019]; Employer The New York Methodist Hospital, 2019 WL 1585790, *4, 2019 NY Wrk Comp LEXIS 3484, *11 [WCB No. 167 6366, Apr. 3, 2019]).

Footnote 4: "Prior to the amendment, a permanently partially disabled worker was able to receive benefits for life" (Matter of Raynor v Landmark Chrysler, 18 NY3d at 54; see Workers' Compensation Law § 15 [3] [former (w)]). Although the amendment to Workers' Compensation Law § 15 (3) took effect immediately upon the signing of the bill on March 13, 2007 (see L 2007, ch 6, § 82 [a]; see Matter of Raynor v Landmark Chrysler, 18 NY3d at 54), nonschedule permanent partial disability "benefits awarded for accidents that occurred prior to March 13, 2007 remained uncapped, while benefits awarded for accidents occurring on or after March 13, 2007 were now subject to a newly imposed cap pursuant to amended section 15 (3) (w)" (Matter of Raynor v Landmark Chrysler, 18 NY3d at 54-55; see Workers' Compensation Law § 15 [3] [former (w)]). We need not, and therefore decline to, address whether our holding that Workers' Compensation Law § 15 (4) includes nonschedule permanent partial disability awards should apply or extend to an uncapped nonschedule permanent partial disability award made for an accident that occurred prior to March 13, 2007.

Footnote 5: In 2009, in response to a Court of Appeals decision holding that a lump-sum payment of an SLU award was statutorily prohibited (see Matter of LaCroix v Syracuse Exec. Air Serv., Inc., 8 NY3d at 353-357), the Legislature amended the Workers' Compensation Law to authorize the full payment of SLU awards in one lump sum at the request of the injured worker (see Workers' Compensation Law §§ 15 [3] [u]; 25 [1] [b], as amended by L 2009, ch 351, §§ 1, 2; see Matter of Estate of Youngjohn v Berry Plastics Corp., 169 AD3d 1239, 1239 [2019], lv granted 34 NY3d 903 [2019]). Prior to the 2009 amendments, however, payments for SLU and nonschedule permanent partial disability awards were both paid in a periodic manner (see Matter of LaCroix v Syracuse Exec. Air Serv., Inc., 8 NY3d at 354; see also Workers' Compensation Law § 25 [1] [former (b)]).

Footnote 6: We take no position regarding the manner in which the remaining weeks of the nonschedule permanent partial disability award are distributed to claimant.