# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 78
In the Matter of the Claim of
Kanye Khalid Green,
     Respondent,
      v.
Dutchess County BOCES et al.,
     Appellants.
Workers' Compensation Board,
     Appellant.

Dustin J. Brockner, for appellant New York State Workers' Compensation Board.
Ralph E. Magnetti, for appellants Dutchess County BOCES et al.
Louis M. Dauerer, for respondent.
New York State Insurance Fund; Injured Workers' Bar Association, amici curiae.

GARCIA, J.:

It is well settled that some categories of workers' compensation benefits may pass, in certain circumstances, to the beneficiaries of injured employees who die from causes unrelated to the work injury. We now clarify that unaccrued portions of a nonschedule

- 1 -

award under Workers' Compensation Law § 15 (3) (w) do not. The statute does not provide for any unaccrued portion of a nonschedule award to remain payable following an injured employee's death. Accordingly, we reverse the order of the Appellate Division and reinstate the original award, representing only that portion accrued but unpaid at the time of death, to decedent's minor son.

Eric Watson sustained an injury in a work-related accident, was classified as having a nonschedule permanent partial disability, and received an award pursuant to Workers' Compensation Law (WCL) § 15 (3) (w) in the amount of $500 per week. Pursuant to statutory caps imposed on the period for which nonschedule awards may be paid, Watson was to receive this amount for no longer than 350 weeks. Watson passed away due to unrelated causes after 311.2 weeks. Claimant, Watson's minor son, sought accrued unpaid amounts of his father's award, as well as benefits for the 38.8 weeks that remained before Watson's award would have reached the statutory durational cap.

A Workers' Compensation Law Judge awarded claimant unpaid amounts owed for the 311.2 weeks preceding Watson's death, but denied claimant the award for the 38.8 weeks between Watson's death and the maximum period of 350 weeks. The Workers' Compensation Board affirmed, explaining that "no additional award is payable to the decedent's surviving child" because "[t]o be entitled to the awards the claimant must have causally related lost time," and "[w]ith a claimant's death, there are no future earnings to lose," so "no posthumous award is warranted" (*Matter of Eric Watson*, slip op at 3 [WCB No. 5071 4439, Jan. 4, 2019]). Claimant appealed, and the Appellate Division modified the award, ruling that "claimant is entitled to an additional posthumous award for the

remaining cap weeks" (183 AD3d 23, 31 [3d Dept 2020]).  Upon remittal, the Workers' Compensation Board was "constrained to find" that claimant was entitled to an additional award of $500 per week for 38.8 weeks.  We now reverse and reinstate the original holding of the Workers' Compensation Board.

There is no dispute that, pursuant to WCL § 33, claimant is entitled to the accrued, unpaid portion of the award which his father should have received during his lifetime, in the amount of 311.2 weeks at $500 per week.  For the following reasons, however, claimant is not entitled to $500 per week for an additional 38.8 weeks.

Under WCL § 15 (4), where an injured employee dies "from causes other than the injury," an award "made to a claimant under subdivision three" may pass, as relevant here, to "a surviving child . . . under the age of eighteen years."  The referenced section, WCL § 15 (3), provides for two categories of awards for injuries resulting in permanent partial disability.  A "schedule loss of use" (SLU) award, provided for in section 15 (3) (a)-(u), is designed to "compensate for loss of earning power, rather than the time that an employee actually loses from work or the injury itself" (*Johnson v City of New York*, — NY3d —, —, 2022 NY Slip Op 02579, *1-2 [2022]).  A nonschedule award, in contrast, seeks to reimburse a claimant for earnings lost due to injury (*see Burns v Varriale*, 9 NY3d 207, 216 [describing a nonschedule award under WCL § 15 [3] [w] as a "reduced earnings award"]).

The Appellate Division held, despite the fundamental difference between these two awards, that because "[s]ubdivision (3) includes both SLU and nonschedule" awards, and because the statute "neither distinguishes SLU awards from nonschedule permanent partial

disability awards, nor contains any limiting language excepting nonschedule permanent partial disability awards from its scope," subdivision (4) must apply to both schedule and nonschedule awards (183 AD3d at 28). This conclusion was incorrect. The nature of nonschedule awards, dependent on an employee's actual earnings and the continuance of the disability, is such that there is no remaining portion of the award that can pass through to a beneficiary.

This is clear from both the statute's language and its legislative history (*see Matter of Mancini v Office of Children & Family Servs.*, 32 NY3d 521, 525 [2018]). Schedule and nonschedule awards are calculated differently, reflecting the different purposes they serve. Nonschedule awards require fact-specific, individual calculations based on the impairment of wage-earning capacity. These awards are measured at "sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages and his or her wage-earning capacity thereafter in the same employment or otherwise," and are paid out over a period of time that "shall not exceed" maximum weekly amounts established by 2007 amendments to the statute (WCL § 15 [3] [w]). Nonschedule awards require "a causal link between the claimant's disability and reduced earning capacity" (*Matter of O'Donnell v Erie County*, 35 NY3d 14, 19 [2020]). The statutory language provides that nonschedule awards are "payable during the continuance of such permanent partial disability," but "subject to reconsideration of the degree of such impairment by the board." Schedule awards, on the other hand, are set at "sixty-six and two-thirds per centum of the average weekly wages," and "shall be paid to the employee" for a fixed, statutorily enumerated period (WCL § 15 [3] [a]–[u]).

As this language shows, contrary to the Appellate Division's description of a nonschedule award as "established, set and fixed at the time of classification" (183 AD3d at 29), the statute clearly provides for the opposite—a nonschedule award is, by its terms, subject to reduction and suspension. Indeed, as we have previously held, a nonschedule award does "not entitle [claimant] to weekly compensation benefits at a specific rate . . . over a set period," because "the rate and duration of benefits awarded by the Board may change from one period to the next" (*Burns*, 9 NY3d at 217).

Historical amendments to the statute show an understanding of this key difference between the two forms of awards, and demonstrate that any unaccrued portion of a nonschedule award does not pass to a beneficiary after the death of an injured employee. Legislative history accompanying a 1947 amendment adding a decedent's estate as a beneficiary under section 15 (4) explained that it addressed "a schedule award in case of death arising from causes other than injury . . . where there are no dependents" (Mem of Workmen's Compensation Bd, Bill Jacket, L 1947, ch 746, at 4, 1947 Legis Ann at 220). Likewise, legislative materials in support of a 1954 amendment adding the individual paying funeral expenses to the list of beneficiaries in WCL § 15 (4) explained that it would apply "only in cases where there is at the date of death an unpaid balance of schedule award" (Letter from the Chair of the Workers' Compensation Board, Bill Jacket, L 1954, ch 687, at 5). Similarly, WCL § 25 (1) (b) was amended in 2009 so as to permit the entirety of a schedule award to be paid out in lump sums, but did not provide for a similar upfront award in the case of a nonschedule award, reflecting the impossibility of accelerating the full amount of a nonschedule award given the speculative nature of its value (L 2009, ch

351, Section 1). It is, therefore, clear that no unaccrued portion of a nonschedule award survives after claimant's death, and the Appellate Division erred by concluding that the statute does not provide for different posthumous treatment of schedule and nonschedule awards.

The Appellate Division concluded that despite the awards' differences, the legislative intent to achieve "parity" between the two types of awards manifested by the 2007 amendments required that the awards also be treated similarly in this context, believing that the alternative holding would " 'effectively perpetuate the very unfairness that the [L]egislature sought to eliminate' " in imposing durational cap weeks for nonschedule awards (183 AD3d at 29, quoting *Matter of Mancini*, 32 NY3d at 531). This reflects a misunderstanding of the legislature's concern when passing the 2007 amendments, which were intended to reduce unfairness arising from the potentially unlimited period for which nonschedule awards could be paid in comparison to the statutorily limited period for which schedule awards are payable (*see* Assembly Introducer's Mem in Support, Bill Jacket,  2007, ch 6, at 30 [amendments sought to eliminate the possibility of "a set duration of benefits for some claimants and lifelong benefits for others"]). These amendments did not evince a general legislative intent to eliminate all distinctions between the two forms of awards. Nor does this Court's acknowledgement of the legislative intent to "reduc[e] disparities" between schedule and nonschedule awards require identical treatment of these forms of awards in contravention of the statute's plain text and purpose (*Mancini*, 32 NY3d at 530).

More than 100 years ago, this Court urged recognition of the difference between schedule and nonschedule awards, explaining that cases "where the award is to be measured by the difference between wages and capacity [nonschedule awards] are, of course, not to be confused with those where the act prescribes a fixed and certain limit [schedule awards]" (*Matter of Jordan v Decorative Co.*, 230 NY 522, 526 [1921]).  Since then, courts have awarded remaining posthumous benefits for schedule awards countless times (183 AD3d at 27-28 [citing cases]), and no court has awarded posthumous benefits based on an unaccrued nonschedule award.[1]  Any changes to this process for posthumous payments—and any general issues related to parity between the types of awards—are for the legislature to address (*see Matter of Lacroix v Syracuse Exec. Air. Serv., Inc.*, 8 NY3d 348, 357 [2007], *superseded by statute on other grounds*; *Matter of Bello v Roswell Park Cancer Inst.*, 5 NY3d 170, 173 [2005]).

Accordingly, the Workers' Compensation Board's 2021 decision and so much of the Appellate Division order brought up for review should be reversed, with costs, and the Workers' Compensation Board's 2019 decision reinstated.

The Workers' Compensation Board's 2021 decision and so much of the Appellate Division order brought up for review reversed, with costs, and the Workers' Compensation Board's 2019 decision reinstated. Opinion by Judge Garcia. Acting Chief Judge Cannataro and Judges Rivera, Wilson, Singas and Troutman concur.

Decided October 27, 2022

---

[1] This is not the first time this issue has been resolved in this manner by the Workers' Compensation Board (*see Matter of Eric Watson*, slip op at 3 [citing cases]).