*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 8, 2015                519841
_____

In the Matter of the Claim of
    EMMA BACZUK,
                    Respondent,

        v                                        MEMORANDUM AND ORDER

GOOD SAMARITAN HOSPITAL et al.,
                    Appellants.

WORKERS' COMPENSATION BOARD,
                    Respondent.
_____


Calendar Date:  September 14, 2015

Before:  Egan Jr., J.P., Rose, Devine and Clark, JJ.

                    _____


        Weber Gallagher Simpson Stapleton Fires & Newby, LLP,
New York City (Ursa S. Hussain of counsel), for appellants.

        Eric T. Schneiderman, Attorney General, New York City
(Steven Segall of counsel), for Workers' Compensation Board,
respondent.

                    _____


Egan Jr., J.P.

        Appeal from a decision of the Workers' Compensation Board,
filed December 24, 2013, which ruled, among other things, that
claimant sustained a causally related 90% loss of wage-earning
capacity.

        Claimant worked as a critical care nurse at the self-
insured employer's hospital for approximately three years, during
which time her average weekly wage was $2,318.52.  Between July
and November 2009, claimant had several allergic reactions to the

hand sanitizer that was used at the hospital, which caused her respiratory distress and necessitated her hospitalization.  As a result, claimant stopped working at the hospital and applied for workers' compensation benefits.  Thereafter, her case was established for a work-related injury of reactive airway dysfunction syndrome and an allergy to the hand sanitizer.

Even after claimant ceased working at the hospital and no longer was exposed to the hand sanitizer, she continued to have a chronic cough that often was triggered by talking or laughing.  Claimant was unable to find work fitting her medical qualifications and, in December 2012, she took a part-time job as a cashier at a department store — working 20 to 25 hours per week at a wage of $8 per hour.  Meanwhile, further hearings were conducted to address the issues of the degree of claimant's causally related disability, permanency and the percentage of loss of her wage-earning capacity.  A Workers' Compensation Law Judge subsequently concluded that claimant had a permanent marked partial disability with a 90% loss of wage-earning capacity and awarded her benefits at the rate of $600 per week.  The Workers' Compensation Board agreed that claimant had a 90% loss of wage-earning capacity, but modified the Workers' Compensation Law Judge's decision by capping claimant's benefits at 500 weeks.  The self-insured employer and its third-party administrator (hereinafter collectively referred to as the employer) now appeal.

The employer challenges the Board's finding that claimant sustained a 90% loss of wage-earning capacity, contending that the calculation should not have been based solely upon claimant's earnings at the department store, but also should have taken into account the vocational and functional considerations outlined in the New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity.  The employer further argues that claimant's earnings loss was only 25% as indicated in the labor market survey prepared by its employment consultant.  We find the employer's assertions to be unpersuasive.

Workers' Compensation Law § 15 (3) (w) provides that the compensation rate for injured employees who have permanent

partial disabilities that are not subject to schedule awards is based upon "the difference between the injured employee's average weekly wages and his or her wage-earning capacity thereafter in the same employment or otherwise" (see Matter of Canales v Pinnacle Foods Group LLC, 117 AD3d 1271, 1273 [2014]). Workers' Compensation Law § 15 (5-a) further provides that the wage-earning capacity of an injured employee with a partial disability "shall be determined by his [or her] actual earnings" while disabled (see Matter of Gioia v Cattaragus County Nursing Home, 122 AD3d 970, 971 [2014]). Notably, the Court of Appeals has recognized that "where actual earnings during the period of the disability are established, wage[-]earning capacity must be determined exclusively by the actual earnings of the injured employee without evidence of capacity to earn more or less during such disability period" (Matter of Matise v Munro Waterproofing Co., 293 NY 496, 500 [1944]).

Vocational and functional considerations, such as a claimant's age, education, training, experience, restrictions and related factors, are appropriately taken into account with respect to loss of wage-earning capacity only as they are relevant to the duration of a claimant's permanent partial disability benefits (see Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015]; Matter of Canales v Pinnacle Foods Group LLC, 117 AD3d at 1271, 1272). This interpretation is consistent with the Board's prior decisions (see Employer: Longley Jones Mgt. Corp., 2012 WL 1893410, 2012 NY Wrk Comp LEXIS 173 [WCB No. 6070 4882, May 21, 2012]; Employer: Buffalo Auto Recovery Serv., 2009 WL 5177881, 2009 NY Wrk Comp LEXIS 15501 [WCB No. 8070 3905, Nov. 12, 2009]), as well as the guidelines themselves. Accordingly, we find that the Board properly based its calculation of claimant's wage-earning capacity upon claimant's actual earnings at the department store.

As for the actual percentage of claimant's earning loss, the employer maintains that such loss amounted to only 25% — a contention based upon the labor market survey prepared by its employment consultant, who identified nine nursing positions in claimant's geographic area that would not cause her to be exposed to the hand sanitizer to which she is allergic and paid between $1,500 and $1,600 per week based upon a 40-hour work week,

thereby replacing 75% of claimant's wage-earning capacity.  The consultant, however, conceded that she never personally met with claimant and that her assessment did not take into account claimant's difficulties in communicating due to her chronic coughing.  Significantly, there was overwhelming medical evidence that, even after she was no longer exposed to the hand santizer, claimant continued to suffer from prolonged bouts of coughing frequently brought on by talking or laughing, which was an impediment to her ability to perform her job as a nurse.  In view of this, the Board could choose to discredit the labor market survey and testimony of the consultant relied upon by the employer (see generally Matter of Shumway v Albany Port Tavern, 154 AD2d 751, 752 [1989]).  As there is substantial evidence in the record to support the Board's finding that claimant sustained a causally related 90% loss of wage-earning capacity, we find no reason to disturb its decision.  In view of our disposition, we need not address the employer's claim regarding the manner in which claimant's weekly benefits should have been calculated.

Rose, Devine and Clark, JJ., concur.


ORDERED that the decision is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court