*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 3, 2016                522076
_____

In the Matter of the Claim of
    JANINE TILL,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

APEX REHABILITATION et al.,
                    Respondents.

WORKERS' COMPENSATION BOARD,
                    Respondent.
_____

Calendar Date:  September 12, 2016

Before:  Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.

                    _____


        Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel),
for appellant.

                    _____


Clark, J.

        Appeal from a decision of the Workers' Compensation Board,
filed June 3, 2015, which ruled, among other things, that
claimant sustained a permanent partial disability and a 15% loss
of wage-earning capacity.

        In 2012, while working as a nursing assistant, claimant
sustained a compensable work-related injury to her back and left
shoulder and was awarded benefits.  In 2014, a Workers'
Compensation Law Judge classified claimant as having sustained a
permanent partial disability and a 40% loss of wage-earning
capacity.  Upon administrative review, the Workers' Compensation
Board agreed that claimant had sustained a permanent partial
disability, but found that claimant's loss of wage-earning

capacity was 15%.  Claimant appeals.

Claimant argues that, because Workers' Compensation Law § 15 (5-a) limited her wage-earning capacity as a nonworking claimant to no more than 75% of her "former full time actual earnings," the Board was statutorily prohibited from determining that she had less than a 25% loss of wage-earning capacity under Workers' Compensation Law § 15 (3) (w).  She asserts that Workers' Compensation Law § 15 (3) (w) (xi) and (xii) are in conflict with Workers' Compensation Law § 15 (5-a) and that, to reconcile this perceived conflict, we should construe these provisions as applying only to claimants who are employed at the time of classification — i.e., those claimants who are not subject to the 75% restriction imposed by Workers' Compensation Law § 15 (5-a).  For claimant to prevail on her argument, we must accept the proposition that a nonworking claimant's loss of wage-earning capacity must always be the inverse of his or her wage-earning capacity.  Mindful of established principles of statutory construction, and upon our examination of the statutory language and applicable legislative intent, we conclude that it need not be.[1]

Under well-settled principles of statutory interpretation, a statute is to be viewed as a whole and "its various sections must be considered together and with reference to each other" (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]; see McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 97, 98).  Where a potential conflict exists, all parts of the statute must be given meaning and effect and, if possible, must be "harmonized to achieve the legislative purpose" (Sanders v Winship, 57 NY2d 391, 396 [1982]; see Heard v Cuomo, 80 NY2d 684, 689 [1993]; Matter of Lumpkin v Department of Social Servs. of State of N.Y., 59 AD2d 485, 490 [1977], affd 45 NY2d 351 [1978], appeal dismissed 439 US 1040 [1978]).

---

[1]  Our holding in this regard should not be construed as prohibiting such a result, provided that the Board's finding is supported by substantial evidence (see e.g. Matter of Rosales v Eugene J. Felice Landscaping, ___ AD3d ___, ___ [2016] [decided herewith]).

As relevant here, in cases of permanent partial disability that are not amenable to schedule awards, "wage-earning capacity" is used to determine a claimant's weekly rate of compensation. Specifically, in such cases, a claimant's rate of compensation is two thirds of the difference between his or her average weekly wage and his or her wage-earning capacity (see Workers' Compensation Law § 15 [3] [w]). Where a claimant is unemployed, wage-earning capacity is fixed by the Board — subject to a 75% cap (see Workers' Compensation Law § 15 [5-a]). In contrast, "loss of wage-earning capacity," a term that was added in 2007 as part of a comprehensive reform of the Workers' Compensation Law (see L 2007, ch 6, § 4), is used at the time of classification to set the maximum number of weeks over which a claimant with a permanent partial disability is entitled to receive benefits (see Workers' Compensation Law § 15 [3] [w]).[2] For instance, where, as here, a claimant is found to have sustained a 15% loss of wage-earning capacity, he or she is entitled to receive benefits for 225 weeks (see Workers' Compensation Law § 15 [3] [w] [xii]).

The durational limits imposed by Workers' Compensation Law § 15 (3) (w) do not distinguish between claimants who are employed at the time of classification and those who are not. Additionally, the legislative history makes clear that "wage-earning capacity" and "loss of wage-earning capacity" are to be used for separate and distinct purposes (see Letter from Workers' Compensation Board, Mar. 9, 2007, Bill Jacket, L 2007, ch 6 at 38-39). Indeed, in establishing the durational limits in Workers' Compensation Law § 15 (3) (w), the Legislature declined to use the traditional rate-based definition of wage-earning capacity to determine the duration of benefits, instead opting to introduce the term "loss of wage-earning capacity." Simply stated, "[t]he determination of a claimant's loss of wage[-earning] capacity is designed to establish duration of benefits, a finding which is unrelated to the traditional purpose of

---

[2] Unlike wage-earning capacity, which can fluctuate based on a claimant's employment status, loss of wage-earning capacity was intended to remain fixed (see Letter from Workers' Compensation Board, Mar. 9, 2007, Bill Jacket, L 2007, ch 6 at 38-39).

[Workers' Compensation Law] § 15 (5-a), which is to calculate the weekly benefit rate" (Employer: Longley Jones Mgt. Corp., 2012 WL 1893410, *3, 2012 NYWCLR [LRP] LEXIS 173, *9 [WCB No. 6070 4882, May 21, 2012]).

Moreover, it would be unreasonable to read into Workers' Compensation Law § 15 (3) (w) a minimum loss of wage-earning capacity of 25% for nonworking claimants simply because the rate-based definition of wage-earning capacity for nonworking claimants imposes a 75% cap. Were we to do so, similarly situated claimants would be treated unequally solely on the basis of whether they were employed at the time of classification (see Employer: Longley Jones Mgt. Corp., 2012 WL 1893410 at *3, 2012 NYWCLR [LRP] LEXIS 173 at *9). While the Board has, on occasion, previously stated that a nonworking claimant's loss of wage-earning capacity is the inverse of his or her wage-earning capacity (see Employer: Waldorf Astoria and ACE American Insurance Co., 2014 WL 935921, *4, 2014 NY Wrk Comp LEXIS 15, *11 [WCB No. 0080 8695, Mar. 11, 2014]; Employer: Buffalo Auto Recovery Serv., 2009 WL 5177881, *6-9, 2009 NY Wrk Comp LEXIS 15501, *18, *21, *25, *27 [WCB No. 8070 3905, Nov. 12, 2009]; but see Employer: FDNY, 2016 WL 4366774, *9-10, 2016 NY Wrk Comp LEXIS 7729, *24-27 [WCB No. 0993 1570, Aug. 3, 2016]; Employer: Longley Jones Mgt. Corp., 2012 WL 1893410 at *3, 2012 NYWCLR [LRP] LEXIS 173 at *9), we note that, in matters of pure statutory interpretation, we need not defer to the Board's interpretation (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009]; Matter of Canales v Pinnacle Foods Group LLC, 117 AD3d 1271, 1272 [2014]). Accordingly, as we discern no conflict between Workers' Compensation Law § 15 (3) (w) (xi) and (xii) and Workers' Compensation Law § 15 (5-a), we reject claimant's argument that the Board was prohibited from determining that she had less than a 25% loss of wage-earning capacity.

We further conclude that substantial evidence supports the Board's determination that claimant had a 15% loss of wage-earning capacity (see Matter of Roman v Manhattan & Bronx Surface Tr. Operating Auth., 139 AD3d 1304, 1306 [2016]; Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015]). The Board properly considered the record evidence regarding

claimant's functional abilities, the severity of her impairment and the physical limitations that prevented her from returning to work as a nursing assistant (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44, 47-49, 51, 120 [2012]), as well as her young age and her ongoing efforts to obtain her general equivalency diploma and medical assistant license (see Matter of Schirizzo v Citibank NA—Banking, 128 AD3d 1293, 1294 [2015]; Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257, 1258 [2015]; Matter of Cameron v Crooked Lake House, 106 AD3d 1416, 1416 [2013], lv denied 22 NY3d 852 [2013]).  Claimant's remaining argument has been examined and found to be without merit.

Egan Jr., J.P., Lynch, Devine and Mulvey, JJ., concur.


ORDERED that the decision is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court