*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 3, 2016

519941
521385
521982

_____

In the Matter of the Claim of
    LUIS ROSALES,

                    Respondent,

        v

EUGENE J. FELICE LANDSCAPING          MEMORANDUM AND ORDER
    et al.,

                    Appellants.

WORKERS' COMPENSATION BOARD,

                    Respondent.
_____


Calendar Date:   September 14, 2016

Before:  McCarthy, J.P., Lynch, Rose, Devine and Mulvey, JJ.

_____

        William O'Brien, State Insurance Fund, White Plains
(Rudolph Rosa Di Sant of counsel), for appellants.

        Joseph A. Romano, New York City, for Luis Rosales,
respondent.

        Eric T. Schneiderman, Attorney General, New York City
(Donya Fernandez of counsel), for Workers' Compensation Board,
respondent.

_____

Lynch, J.

Appeals (1) from a decision of the Workers' Compensation Board, filed January 16, 2014, which ruled, among other things, that claimant sustained a permanent partial disability and a 90% loss of wage-earning capacity, and (2) from two amended decisions of said Board, filed July 1, 2015 and October 29, 2015, which, upon reconsideration, among other things, clarified the Board's prior decision.

In June 2010, claimant was injured while working as a landscaper.  Consequently, he has not worked since September 2010 and underwent back surgery in October 2010.  Thereafter, claimant filed a claim for workers' compensation benefits.  The claim was first heard in March 2011 before a Workers' Compensation Law Judge (hereinafter WCLJ), who determined that the claim was valid and that claimant's average weekly wage was $500.  The WCLJ also determined that claimant suffered a permanent partial class 3, severity B impairment, which indicates a level one medical impairment on a six-point scale, level six being total impairment (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity, table 18.1 [2012]).  The WCLJ further found that claimant sustained a permanent partial disability of 90% after considering various vocational factors.  In particular, claimant testified, through a translator, that he was 46 years old, was from El Salvador, had limited English skills, had only completed second grade and had a work history comprised of manual labor.  The WCLJ awarded benefits at a rate of $300 per week, effectively fixing claimant's wage-earning capacity at 10%.

In a sequence of three decisions, culminating in its October 2015 decision, the Workers' Compensation Board affirmed the WCLJ decision, concluding that vocational factors may be considered in calculating the wage-earning capacity of a claimant

with a permanent partial disability.  The employer and its
workers' compensation carrier (hereinafter collectively referred
to as the employer) have appealed all three Board decisions.

Where, as here, a claimant sustains a permanent partial
disability that is not amenable to a schedule award, the Board is
obligated to fix both the duration of the benefit and the weekly
compensation rate (see Workers' Compensation Law § 15 [3] [w]).
Compensation is payable at a rate of "sixty-six and two-thirds
percent of the difference between the injured employee's average
weekly wages and his or her wage-earning capacity thereafter in
the same employment or otherwise" (Workers' Compensation Law § 15
[3] [w]).[1]  Durational limits are based on a claimant's "loss of
wage-earning capacity," a phrase added to Workers' Compensation
Law § 15 (3) (w) as part of a comprehensive reform in 2007 (see L
2007, ch 6; Matter of Canales v Pinnacle Foods Group LLC, 117
AD3d 1271, 1273-1274 [2014]).  There is no dispute here that the
Board could consider vocational factors in setting claimant's
loss of wage-earning capacity, and we perceive no abuse of
discretion in the Board's setting that loss at 90% — a finding
that yields a maximum benefit duration of 475 weeks (see Workers'
Compensation Law § 15 [3] [w] [iii]; Matter of Roman v Manhattan
& Bronx Surface Tr. Operating Auth., 139 AD3d 1304 [2016]; Matter
of Baczuk v Good Samaritan Hosp., 132 AD3d 1033, 1035 [2015];
Matter of Wormley v Rochester City Sch. Dist., 126 AD3d 1257,
1258 [2015]; Matter of Canales v Pinnacle Foods Group LLC, 117
AD3d at 1273; Matter of Cameron v Crooked Lake House, 106 AD3d
1416 [2013], lv denied 22 NY3d 852 [2013]).

At issue is whether the Board was also authorized to
consider vocational factors in determining claimant's wage-

---

[1]  Under this formula, the Board computed claimant's weekly
rate as follows: $500 (average weekly wage) - $50 (10% of average
weekly wage) = $450 ÷ ⅔ = $300.

earning capacity for purposes of computing the rate of compensation. Under Workers' Compensation Law § 15 (5-a), for a claimant with no actual earnings, "the [B]oard may in the interest of justice fix such wage[-]earning capacity as shall be reasonable, but not in excess of seventy-five per centum of [a claimant's] former full time actual earnings, having due regard to the nature of his [or her] injury and his [or her] physical impairment." The employer maintains that claimant's wage-earning capacity under this provision should have been based only on his physical injury or disability without regard to "vocational deficits" resulting from, among other things, his limited education, inability to read and write English and his work history.

In Matter of Canales v Pinnacle Foods Group LLC (117 AD3d 1271 [2014], supra), we rejected a claimant's contention that vocational factors could be considered in setting her wage-earning capacity during the period of her temporary partial disability. In so holding, we observed "that the term 'loss of wage-earning capacity' is relevant only to the determination of the duration of permanent partial disability benefits at the time of classification, and that its addition to Workers' Compensation Law § 15 (3) (w) was not intended to alter the Board's reliance on a claimant's . . . degree of physical impairment to determine his or her 'wage[-]earning capacity' as that term is used in Workers' Compensation Law § 15 (5-a)" (id. at 1274). The employer would have us apply that rule here, emphasizing, correctly, that Workers' Compensation Law § 15 (5-a) has been applied to determine a claimant's wage-earning capacity in both temporary and permanent partial disability cases (see Matter of Matise v Munro Waterproofing Co., 293 NY 496, 499-500 [1944]; Matter of Canales v Pinnacle Foods Group LLC, 117 AD3d at 1273]). For the following reasons, we decline to do so.

Statutorily, the key distinction between a temporary and permanent partial disability claim is that the Board is required to set a durational limit for a non-scheduled permanent disability (see Workers' Compensation Law § 15 [3] [w]).  In doing so, as discussed above, the Board is authorized to consider applicable vocational factors when determining a claimant's loss of wage-earning capacity (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3).  Where, as in Canales, the claimant has suffered a temporary partial disability, the Board does not establish a durational limit, so his or her "loss of wage-earning capacity" is plainly an extraneous issue.  This is a sensible result because it is expected that one who is temporarily disabled will be able to return to his or her former or similar employment.

Here, unlike Canales, claimant suffered a permanent partial disability, there is no expectation that he will ever return to his former or similar employment as a laborer, and the Board necessarily considered vocational factors when it established his loss of wage-earning capacity.  Because the evidence established that claimant did not earn actual wages, the statute authorized the Board to "[fix] in the interest of justice . . . such wage[-]earning capacity as shall be reasonable . . . having due regard to the nature of his injury and his physical impairment" (Workers' Compensation Law § 15 [5-a]).  With respect to a permanent partial disability, we do not read the "due regard to" clause as limiting the standard to an assessment of the physical disability alone, but rather to emphasize the significance of the injury in the calculus.  Instead, we find that the broad discretionary language authorized the Board to consider vocational factors that reflected claimant's true ability to secure employment, particularly in the absence of evidence to negate claimant's testimony that his injury contributed to his loss of wage-earning capacity (see Matter of Haibel v C.G. Haibel, Inc., 101 AD2d 678, 679 [1984]).  Consequently, under the

circumstances presented, we perceive no error in the Board's determination to fix claimant's wage-earning capacity based on the undisputed evidence of his physical disability and loss of wage-earning capacity resulting from his functional limitations and vocational impediments (see Matter of Cameron v Crooked Lake House, 106 AD3d at 1416; Matter of Weinhart v Motors Holding, 245 AD2d 577, 579 [1997]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3). Further, because we find that the Board's determination to fix claimant's wage-earning capacity at 10% was supported by substantial evidence, we decline to disturb it (see Matter of Cameron v Crooked Lake House, 106 AD3d at 1416).

McCarthy, J.P., Rose, Devine and Mulvey, JJ., concur.

ORDERED that the decision and amended decisions are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court