Matter of Sheets v Airy Ridge Farm, LLC (2018 NY Slip Op 05391)





Matter of Sheets v Airy Ridge Farm, LLC


2018 NY Slip Op 05391


Decided on July 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 19, 2018

526000

[*1]In the Matter of the Claim of PAUL L. SHEETS, Appellant, 
v
AIRY RIDGE FARM, LLC, et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: June 6, 2018

Before: Devine, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


Aaron Zimmerman, Syracuse, for appellant.
William O'Brien, State Insurance Fund, Liverpool (Honor A. Sherman of counsel), for State Insurance Fund, respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a decision of the Workers' Compensation Board, filed April 10, 2017, which ruled that claimant was not entitled to a benefit rate greater than the rate established at the time that he was classified with a permanent partial disability.
Claimant, a dairy farmer, was injured in April 2015 while working on a farm when a cow backed up and struck him in the chest. He filed a claim for workers' compensation benefits, and a Workers' Compensation Law Judge (hereinafter WCLJ) established his case for a work-related injury involving a fractured sternum. Claimant continued to work following this incident even though he experienced pain that was aggravated by certain activities.
In August 2016, after conflicting medical reports were submitted by claimant's treating orthopedist and an orthopedist who examined him on behalf of the State Insurance Fund (hereinafter the carrier) regarding the severity of claimant's injury and his functional limitations, a hearing was conducted before a WCLJ on the issue of permanency. At that hearing, the parties resolved these issues by entering into a stipulation that provided: (1) for the period September 11, 2015 to December 31, 2015, claimant had no compensable lost time or reduced earnings; (2) for the period after December 31, 2015 to August 1, 2016, claimant had a tentative reduced earnings rate of $141.50 per week, with the carrier to continue payments thereafter at the tentative reduced earnings rate of $125 per week; and (3) claimant had a loss of wage-earning capacity of 45%. Notably, in explaining the stipulation to claimant, his counsel informed him that he would receive a benefit of $169.65 per week based upon his "45% disability" if he were not working. The WCLJ issued a decision consistent with the parties' stipulation classifying claimant as having a permanent partial disability under Workers' Compensation Law § 15 (3) (w) with a loss [*2]of wage-earning capacity of 45%, setting a cap on wage loss benefits of 300 weeks and awarding benefits at the tentative reduced earnings rate of $125 per week.
One week after the hearing, claimant stopped working on the advice of his orthopedist. The orthopedist issued updated reports that initially increased the percentage of claimant's temporary impairment to 100% from his prior assessment of 50%, but then reduced the percentage to 75%. In October 2016, at the request of claimant's counsel, a WCLJ conducted a hearing to determine if claimant's benefit rate should be increased based upon these reports. The WCLJ concluded that it should and awarded benefits at varying rates as follows: (1) for the period August 2, 2016 through August 8, 2016, benefits were awarded at the tentative reduced earnings rate of $125 per week; (2) for the period August 8, 2016 through September 19, 2016, benefits were awarded at the temporary total disability rate of $377 per week; and (3) for the period September 19, 2016 through October 14, 2016 and thereafter, benefits were awarded at the temporary partial disability rate of $282.75 per week. The carrier appealed to the Workers' Compensation Board seeking modification of the WCLJ's decision by reducing the awards from August 8, 2016 forward to the rate of $169.65 per week, a rate corresponding to claimant's 45% loss of wage-earning capacity. The Board modified the WCLJ's decision accordingly, and this appeal by claimant ensued.
Claimant argues that the Board erroneously modified the WCLJ's decision and should have determined the amount of his wage loss benefits after he stopped working based upon the degree of his permanent physical impairment under Workers' Compensation Law § 15 (5-a), taking into consideration the updated reports of his treating orthopedist, rather than basing it on the percentage of his loss of wage-earning capacity under Workers' Compensation Law § 15 (3) (w). Initially, we agree with claimant that wage-earning capacity and loss of wage-earning capacity are distinct concepts. Wage-earning capacity is used to determine a claimant's rate of compensation taking into consideration the nature of his or her injury and his or her physical impairment (see Workers' Compensation Law § 15
[5-a]; Matter of Rosales v Eugene J. Felice Landscaping, 144 AD3d 1206, 1208-1209 [2016], lv denied 29 NY3d 909 [2017]; Matter of Canales v Pinnacle Foods Group., 117 AD3d 1271, 1273 [2014]) and can fluctuate based upon the claimant's employment status (see Matter of Perez v Bronx Lebanon Hosp. Ctr., 151 AD3d 1159, 1160 [2017]; Matter of Barrett v New York City Dept. of Transp., 147 AD3d 1167, 1168 [2017]). Loss of wage-earning capacity, on the other hand, "'is used at the time of classification to set the maximum number of weeks over which a claimant with a permanent partial disability is entitled to receive benefits'" (Matter of Barrett v New York City Dept. of Transp., 147 AD3d at 1167-1168, quoting Matter of Till v Apex Rehabilitation, 144 AD3d 1231, 1233 [2016], lv denied 29 NY3d 909 [2017]; see Workers' Compensation Law § 15 [3] [w]; Matter of Canales v Pinnacle Foods Group, 117 AD3d at 1274).
Notwithstanding the foregoing, the parties here entered into a stipulation resolving matters relevant to the issue of permanency that was intended to include the benefit rate to be paid if claimant stopped working following his classification. Otherwise, there would have been no reason for claimant's counsel to inform claimant at the time the stipulation was executed that, in the event he stopped working, he would receive a weekly benefit rate of $169.65 based upon his "45% disability." Significantly, this stipulation was approved by the WCLJ and incorporated into her decision. Accordingly, it is binding on the parties (see 12 NYCRR 300.5 [b] [2]), and there has been no showing of fraud, collusion, mistake or other grounds warranting its invalidation (see Matter of Dukes v Capitol Formation Inc., 213 AD2d 756, 757 [1995], lvs dismissed 86 NY2d 810 [1995], 87 NY2d 891 [1995]). Therefore, we find no reason to disturb the Board's decision.
Devine, J.P., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.