Matter of Cody v Ark Glass & Glazing Corp. (2020 NY Slip Op 02149)





Matter of Cody v Ark Glass & Glazing Corp.


2020 NY Slip Op 02149


Decided on April 2, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 2, 2020

529031

[*1]In the Matter of the Claim of Scott Cody, Appellant,
v
Ark Glass & Glazing Corp. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: February 18, 2020

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Colangelo, JJ. 


Segar & Sciortino PLLC, Rochester (Jennifer Lunsford of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Ronald E. Weiss of counsel), for Ark Glass & Glazing Corp. and another, respondents.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed November 1, 2018, which ruled, among other things, that claimant was not entitled to further workers' compensation benefits pursuant to Workers' Compensation Law § 15 (3) (w).
In April 1999, claimant, a window glazer, sustained an injury to his lower back during a work-related accident, and, in August 2001, he was classified with, and began receiving benefits for, a 75% permanent partial disability based on that injury. In November 2012, claimant settled the indemnity portion of that claim pursuant to Workers' Compensation Law § 32. Despite the permanent nature of the foregoing classification, claimant returned to work as a window glazer — what is described as full-time, heavy manual labor — in June 2014. In January 2015, claimant slipped and fell on ice while at work, injuring his back. He underwent spinal surgery thereafter, and his ensuing claim for workers' compensation benefits was established, again for injury to his lower back. By reserved notice of decision filed August 30, 2017, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant's most recent injury was casually related to the January 2015 accident. The WCLJ classified claimant with a permanent partial disability and determined that his loss of wage-earning capacity is 70%, entitling him to benefits not to exceed 375 weeks, while holding the issue of apportionment in abeyance given the lack of medical opinion as to apportionment percentages. The WCLJ, however, also found that claimant was not currently attached to the labor market and, thus, not presently entitled to wage loss benefits — a finding not at issue on this appeal.
The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) appealed, arguing that no classification was warranted following claimant's January 2015 accident inasmuch as the degree of his permanent partial disability had not increased since his prior classification to the same injury site. The Workers' Compensation Board agreed that claimant has a 70% loss of wage-earning capacity (see Workers' Compensation Law § 15 [3] [w]) and set his wage-earning capacity at 30% (see Workers' Compensation Law § 15 [5-a]). However, the Board ultimately declined to award claimant indemnity benefits based on his most recent classification. In doing so, the Board reasoned that, had the accident underlying claimant's prior permanent partial disability occurred after the 2007 institution of durational caps for nonschedule awards, and, thus, after the creation of "loss of wage-earning capacity" as a component of the duration calculus (see L 2007, ch 6, § 4), claimant's prior impairment "would have likely resulted in a loss of wage-earning capacity finding of at least 75%." Subtracting claimant's 70% loss of wage-earning capacity from the foregoing percentage, and seeking to avoid what it viewed as an inequitable windfall to claimant, the Board found that claimant had already been fully compensated for his present loss of wage-earning capacity by the prior permanent partial disability award. The Board therefore rescinded the WCLJ's finding that claimant was entitled to 375 weeks of wage loss benefits, prompting this appeal by claimant.[FN1]
Claimant maintains that the Board erred by conflating the loss of wage-earning capacity calculation currently in use with the calculation of the degree of permanent partial disability used for his 2001 classification so as to find that claimant's present loss of wage-earning capacity is subsumed by his prior award. Claimant asserts that the Board implemented a de facto apportionment at a point in the case where there was insufficient evidence to do so. The carrier, in contrast, views the Board's determination as one of ordinary apportionment, which it contends is supported by substantial evidence.
The WCLJ expressly held the issue of apportionment in abeyance. It appears that what the Board sought to accomplish was akin to the reduction permitted where there are successive established injuries to the same schedule member (see e.g. Matter of Johnson v City of New York, 180 AD3d 1134, ___, 2020 NY Slip Op 00903, *1; Matter of Genduso v New York City Dept. of Educ., 164 AD3d 1509, 1509-1510 [2018]). That approach, however, would be inappropriate here as a nonschedule award pursuant to Workers' Compensation Law § 15 (3) (w), unlike a schedule loss of use award (see Workers' Compensation Law § 15 [3] [a]-[t]), is allocable to a particular period of disability, not a degree of presumed impairment (see Matter of Robinson v Workmen's Circle Home, 164 AD3d 1000, 1001 [2018], lv denied ___ NY3d ___ [Feb. 18, 2020]; Matter Taher v Yiota Taxi, Inc., 162 AD3d 1288, 1289 [2018], lv dismissed 32 NY3d 1197 [2019]; Matter of Till v Apex Rehabilitation, 144 AD3d 1231, 1233 [2016], lv denied 29 NY3d 909 [2017]; Matter of Keselman v New York City Tr. Auth., 18 AD3d 974, 976 [2005], appeal dismissed 5 NY3d 880 [2005], lv denied 6 NY3d 708 [2006]). The formulas used to arrive at claimant's pre-cap award and his current award are different. Today, durational limits are based on a claimant's loss of wage-earning capacity, a phrase that includes consideration of both the claimant's medical impairment and vocational factors (see Matter of Rosales v Eugene J. Felice Landscaping, 144 AD3d 1206, 1207 [2016], lv denied 29 NY3d 909 [2017]). Moreover, we agree with claimant that the Board deeming him as having a specific percentage loss of wage-earning capacity with respect to his pre-cap permanent partial disability is speculative, even if it were theoretically permissible for the Board to subtract loss of wage-earning capacity findings in the manner that it did. Not to be overlooked is the fact that claimant had resumed full-time employment as a window glazer and was injured during the course of that employment (see Workers' Compensation Law § 15 [7]). As there is no challenge to the Board's loss of wage-earning capacity finding itself, we remit the matter for the reinstatement of claimant's 375 weeks of wage loss benefits based on his most recent permanent partial disability classification and for further development of the record as to apportionment, if warranted (see Matter of Moore v St. Peter's Hosp., 18 AD3d 1001, 1002 [2005]).
Egan Jr., J.P., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as ruled that claimant was not entitled to further workers' compensation benefits pursuant to Workers' Compensation Law § 15 (3) (w); matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The full Board later denied claimant's application for discretionary review.